No. 20-17389

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

FELIX MENDELSON, as trustee for
THE SHTAIMAN FAMILY TRUST,

*Plaintiff-Appellant*,

v.

COUNTY OF SAN MATEO,

*Defendant-Appellee*.

On Appeal from the United States District Court
for the Northern District of California
No. 3:20-cv-05696-AGT
Hon. Alex G. Tse

APPELLANT'S REPLY BRIEF IN SUPPORT OF
HIS MOTION FOR JUDICIAL NOTICE

Paul J. Beard II
FISHERBROYLES LLP
4470 W. Sunset Blvd., Suite 93165
Los Angeles, CA 90027
Telephone No.: 818-216-3988
Email: paul.beard@fisherbroyles.com

*Attorney for Appellant*
FELIX MENDELSON, as trustee for
THE SHTAIMAN FAMILY TRUST

## I.   INTRODUCTION

Appellant Felix Mendelson requests that this Court take judicial notice of two publicly available documents created by Appellee County of San Mateo. The documents are intended to show that the County's current view of its LCP—a view manufactured for purposes of this litigation—departs from the County's consistent and longstanding position over the years that the LCP categorically bars all development in the Riparian Corridor, where Mr. Mendelson's lots are located. The documents' authenticity—and the fact that they reflect officials' statements of how the LCP applies to Riparian Corridor parcels—are not subject to reasonable dispute. Indeed, at bottom, the County does not claim otherwise.

Instead, the County distracts with arguments that have no bearing on the narrow purpose for which Mr. Mendelson seeks judicial notice. For example, the County claims Mr. Mendelson wants the Court to accept as true the *assertion* (reflected in the documents) that the LCP bars development in the Riparian Corridor. But that's false: The motion simply seeks acceptance of the documents' authenticity and the fact that they contain statements by County officials about the LCP's development ban. Those facts are proper subjects of judicial notice.

The County also tries to minimize the documents' import, arguing each reflects only one County's staffer's unique, decades-old view of the LCP's application to one parcel. The County misleads the Court. To prove it, Mr. Mendelson is compelled to attach additional County documents—produced by the County itself in response to a Public Records Act request—that establish the County's longstanding and consistent position (at least before this litigation) that

2

the LCP bars all development in the Riparian Corridor without exception or discretion.

None of the County's objections holds water. The Court should grant the motion and judicially notice the documents attached thereto.

## II.    ARGUMENT

### A.    The Exhibits Are Relevant to Help Establish That the Court Owes No Deference to the County's Interpretation of the LCP

No deference is owed to an agency's interpretation of the law when that law is clear and unambiguous. "If the regulatory language" at issue "is clear and unambiguous, [the Court's] task is at an end, and there is no need to resort to canons of construction and extrinsic aids to interpretation." *Berkeley Hills Watershed Coalition v. City of Berkeley*, 31 Cal. App. 5th 880, 890-91 (2019); *Hoitt v. Department of Rehabilitation*, 207 Cal. App. 4th 513, 523 (2012) (same). Federal rules of interpretation are in accord. As the United States Supreme Court has explained, deference to an agency's interpretation of its own regulation is unwarranted, when "the regulation in question [is] unambiguous." *Chase Bank USA, N.A. v. McCoy*, 562 U.S. 195, 211 (2011) (discussing *Auer* deference). That is because "adopting the agency's contrary interpretation would permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation." *Id.* (internal citation and quotation marks omitted).

On the other hand, if a law *is* ambiguous, the Court may consider extrinsic aids, including the agency's well-established interpretation that stands the test of time. *Yamaha Corp. of America v. State Bd. of Equalization*, 19 Cal. 4th 1, 12-13

3

(1998). But "[a] vacillating position . . . is entitled to no deference." *Id.* at 13 (internal citation and quotation marks omitted). Deference is appropriate only if the agency has "consistently maintained the interpretation in question, especially if [it] is long-standing." *Id.* (internal citation and quotation marks omitted).

Here, the LCP is clear and unambiguous. As explained in the Opening Brief, the LCP unequivocally precludes economically beneficial or productive use and development of Mr. Mendelson's lots, which lie entirely in the protected Riparian Corridor and Buffer Zone. There are no exceptions. As a consequence, the Court need not resort to any extrinsic interpretive aids, including the County's own purported interpretation of the LCP. *Berkeley Hills*, 31 Cal. App. 5th at 890-91.

However, in the event the Court deems the LCP ambiguous and entertains the County's litigation-inspired argument that the LCP gives it discretion to evade the law's clear ban on development of Mr. Mendelson's lots, then the Exhibits attached to his motion are relevant. The Exhibits establish that the County's interpretation is at best a "vacillating" one—not an interpretation that has been "consistently maintained" or "long-standing." As a result, it should be disregarded. *Yamaha Corp.*, 19 Cal. 4th at 12-13.

## B.     The County's Objections to Judicial Notice of the Exhibits Lack Merit

The County makes a number of arguments against judicial notice of the Exhibits, but none of them stands up to scrutiny.

First, the County argues that this Court may not take judicial notice of the Exhibits, because the district court did not do so. County Opp. to RJN at 1-2. The County cites a case for the principle that an appellate court normally does not take

judicial notice of facts that "'were not before the district court.'" *Id.* at 1 (quoting *Flick v. Liberty Mut. Fire Ins. Co.*, 205 F.3d 386, 393 n. 7 (9th Cir. 2000)). But the County is wrong on both the facts and the law.

In *Flick*, this Court denied a motion for judicial notice *made for the first time on appeal*. The moving party had not presented to the district court the facts for which she sought judicial notice. *Id.* at 393 n.7; *see also Yagman v. Republic Ins.*, 987 F.2d 622, 626 n.3 (9th Cir. 1993) (rejecting belated request for judicial notice of newspaper articles that the requester had "not presented to the district court" or "in conjunction with this appeal"). Under these circumstances, the Court may choose to deny a motion for judicial notice.

By contrast, here, Mr. Mendelson *did* present the Exhibits to the district court via a timely request for judicial notice. *See* ECF No. 16 (Plaintiff's Request for Judicial Notice). *Id.* Thus, the Exhibits were squarely before the district court. It is true that the district court ultimately decided not to consider the Exhibits, because the court did not reach the issue for which the documents were presented. ER-7 (footnote 3). In other words, given how the district court decided the case, the request was—in its view—moot. But the court's ruling was necessarily predicated on the fact that the Exhibits "were . . . before the district court"; how could a court review and deny a request that was not before it? *Flick*, 205 F.3d at 393 n. 7. *Flick* and other precedents counseling against requests for judicial notice not made in the district court do not bar Mr. Mendelson's Exhibits.

Second, the County objects that the "inferences [Mr. Mendelson] wants the Court to draw from the exhibits are 'subject to reasonable dispute,' and are in fact

disputed, making them ineligible for judicial notice." County Opp. to RJN at 2. Specifically, the County contends that the statements made in the Exhibits are subject to "debate" and "varying interpretations." *Id.* at 3. But the County utterly misrepresents the purpose of Mr. Mendelson's motion.

The motion seeks judicial notice of one simple fact: in the LCP's early years, County officials publicly asserted that the LCP categorically bars the County from approving development in the Riparian Corridor, without exception or discretion. Contrary to the County's mischaracterization, ***the motion does not demand that the Court accept the truth of the assertion itself***; it requests only that the Court accept the ***existence*** of that assertion, as reflected in -authentic correspondence between the County and property owners. The facts that the Exhibits are authentic, and that County officials made the pertinent assertions, cannot be disputed. Both facts are the proper subjects of judicial notice.

 Third, the County misrepresents the significance of the Exhibits. It attempts to discredit the Exhibits, by characterizing each of them as just "*one* instance of *one* staff member expressing their [sic] opinion that *one* specific development proposal on *one* specific plot of land is unlikely to receive a variance." (County Opp. to RJN at 3). The County knows this to be false.

As the County is aware, numerous County officials and consultants over the years have expressed the same consistent view of the LCP: The LCP categorically bars the County from allowing development in the Riparian Corridor—including on Mr. Mendelson's lots—without exception or discretion. The County knows this, because it produced a number of revealing documents to Mr. Mendelson in

response to his January 8, 2019 Public Records Act request. *See* Declaration of Felix Mendelson in Support of Reply Brief in Support of Motion for Judicial Notice ("Mendelson Decl. for Reply"). Those documents are described below:

- Exhibit A is an April 3, 1992 memo from Ted Herzog (County Planner), expressing his view that the way to "allow property owners" in the Riparian Corridor "the ability to develop" their parcels is through "an amendment to the County Local Coastal Program." In other words, as written, the LCP categorically bars such development.

- Exhibit B is a September 11, 1991, email by County biologist and principal planner, Roman Gankin, expressing the concern that misinformation is being given out by planners to those interested in the "Montecito Lots" (those lots in the Riparian Corridor, like Mr. Mendelson's), and that these lots should be flagged because they are unbuildable for being in Riparian Corridor due to the LCP. Mr. Gankin instructs planners to flag the affected parcels so that planners will stop giving out misinformation that they are buildable.

- Exhibit C is an April 15, 1993, email by Mr. Gankin, again flagging the "problem" that property owners of Riparian Corridor parcels, as well as their agents, are being misinformed that said parcels are developable.

- Exhibit D is an April 27, 1993 memo from Carolina Labat (County Planning Commission Secretary) informing "interested parties" that the Planning Commission recommends an amendment to the LCP that "would allow development" on "lots located within the "riparian corridor

7

in urban El Granada." The memo shows that *the Planning Commission itself* interpreted the LCP as categorically barring development in the Riparian Corridor, without exception or discretion. Why would such an LCP amendment be necessary, if—as the County now claims in litigation—it has the discretion under the LCP to allow development?

- Exhibit E is a draft ordinance for the Planning Commission's consideration. The ordinance would have codified a variance process to allow development in the otherwise-unbuildable Riparian Corridor in order to avoid a taking. The draft has a file number of ZTA-93-0003, indicating it was created in 1993 or thereabouts. The ordinance was never adopted. Again, why would such an ordinance have been necessary, if the LCP already gave the County discretion to allow development in the Riparian Corridor?

- Exhibit F is a County list identifying all of the 18 property owners in the Riparian Corridor, assessing the buildability of each owner's lot(s), and indicating whether an LCP amendment is necessary to develop a given lot. Mr. Mendelson's aunt and uncle (the Goldburds) owned the subject parcels under two APNs. Both APN's are marked "no" under the "Buildable" column, and "yes" under the "Requires LCP Amend" column.

- Exhibit G is a County-drafted memo, dated September 17, 1991, and entitled, "Policy Response Options." The memo describes options with respect to parcels in the Riparian Corridor. Options include County or

8

nonprofit acquisition of unbuildable parcels and LCP amendment allowing development. The most telling option is for the County to "[d]o nothing" and "let the property owner prove [a] 'taking' in court."

- Exhibit H consists of excerpts prepared by Habitat Restoration Group, commissioned by the County in or around 1989 to survey and map what is now known as the Riparian Corridor. The documents establish that the County had very detailed knowledge about the sensitive resources in the Riparian Corridor as early as 1989. They are detailed as to what plants and animals can be found in the Riparian Corridor. As the document shows, the County had a comprehensive approach to lots in the corridor—not the kind of *ad hoc*, property-by-property approach the County argues is reflected in the Exhibits attached to Mr. Mendelson's motion.

These documents are proffered to the Court for the limited purpose of rebutting the County's claim that the two Exhibits attached to Mr. Mendelson's motion reflect unique and unrepresentative views of staff. The truth is that the Exhibits reflect the County's consistent and longstanding view—before this lawsuit was filed—that the LCP categorically bars all development in the Riparian Corridor.

Again, these documents were produced by the County in response to Mr. Mendelson's Public Records Act request in January 2019. In that request, Mr. Mendelson asked for all "reports for Montecito Riparian Corridor used in designation of the Riparian Corridor, including biologic, geologic, geotechnical,

soils, surveys, and etc." Mendelson Decl. for Reply, Exh. I. The County cannot dispute the documents' authenticity, or that they contain statements made by its officials and consultants. As the documents show, from the earliest days of the LCP, the County had an unequivocal and comprehensive position about the LCP's policy on Riparian Corridor lots: They are unbuildable, and the *only* way to allow development on those lots is through an LCP amendment.

Finally, the County argues that taking judicial notice of the Exhibits would somehow "conflict" with the "longstanding idea that Court should not try to guess whether a local agency would allow a certain use on a particular property." County Opp. to RJN at 4. But no guessing is required here. The LCP is plain: It unequivocally bars development on Mr. Mendelson's lots. Exhibits A and B, attached to Mr. Mendelson's motion, simply establish that the County's newfangled interpretation of its LCP—manufactured for litigation purposes—departs dramatically from officials' repeated and consistent view over the years.

### III.   CONCLUSION

For these reasons, and those stated in Mr. Mendelson's motion, the Court should grant the motion and judicially notice Exhibits A and B.

Date:    March 29, 2021            Respectfully submitted,


                                  */s/* Paul J. Beard II
                                  PAUL J. BEARD II

                                  *Attorney for Appellant*
                                  FELIX MENDELSON, as trustee for
                                  THE SHTAIMAN FAMILY TRUST

## DECLARATION OF FELIX MENDELSON

I, Felix Mendelson, declare as follows:

1.      As trustee of The Shtaiman Family Trust, I am the Appellant in this case. I have personal knowledge of all facts stated in this declaration, and if called to testify, I could and would testify competently thereto.

3.      On or about January 8, 2019, I submitted to the County a Public Records Act request seeking County-maintained records pertaining to the Montecito Riparian Corridor. A true and correct copy is attached as Exhibit I.

4.      The County produced records responsive to my request. Attached as Exhibits A-H are true and correct copies of some of the records I received from the County.

5.      I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this declaration was executed on March 29, 2021.


s/ FELIX MENDELSON
_____
FELIX MENDELSON

11

# Exhibit A

*from* **Ted Herzog**

*Planner • Current Planning*

Date 4/3/92

▼ Thomas Reid,

Please review the enclosed materials. Then I'd like to set up a meeting between: Roman Gankin, Michael Murphy, you and myself. We have decided to pursue an amendment to the County Local Coastal Program to allow property owners the ability to develop these parcels to some extent.

We are thinking that we will proceed with

Mail Drop 5500

590 Hamilton Street

Redwood City, CA 94063

415 • 363 • 1858

SAN MATEO COUNTY PLANNING & BUILDING DIVISION

a focused EIR.

The immediate questions for which we would like to discuss your involvement are:

1) What other similar situations exist in urban portions of the Mid-Coast?

2) What is the meaning of removal of the riparian habitat? What other agencies would become involved and what kinds of mitigation are required?

We are looking to proceed fairly rapidly. Please call at your earliest convenience.

Ted Huyog

# Exhibit B

```
From:      Roman Gankin   (ROMANG)
To:        KimP, BillR
Date:      Wednesday, September 11, 1991  10:22 am
Subject:   Montecito Ave.
```

There apparently is some incorrect information being handed out
at the counter with respect to certain parcels in the El Granada
area.  We have usually been very careful about telling folks who
are interested in property in the Montecito area by informing
them that there are constraints to development.  These properties
are not currently developable based upon the LCP.  The County is
now working on a methodology to "get around" this problem.  One
Bruce Turner recently purchased one of the lots after having been
told at the counter that the lot was buildable.  Now he finds out
that there are serious problems, but even so, it took him some
time to arrive at this knowledge, and then mostly by hearsay in
the community.

There is NO garter snake on the site, but it IS riparian habitat
and is not developable due to the LCP policy on riparian
habitats.  Please, somehow have these properties flagged at the
counter so that we don't continue to disseminate misinformation.
See Ted Herzog for a map of the area.

CC:        TedH, SamH

# Exhibit C

From: Roman (ROMANG)
To: TedH
Date: Thursday, April 15, 1993  11:44 am
Subject: Montecito

Terry has asked me to make sure that the Board staff report
includes in it a section about how things kind of went wrong at
the Counter wherein some folks, at least at the outset, may have
been given contrary information regarding the buildability in the
Montecito swamp area.

You might listen to the tapes to hear Terry's statement and go
from there.  I personally do not know of any "order" by me or by
Bill Rozar (please check with Bill) to place a map or somehow
red-flag the Montecito Road properties other than providing DRC
with a map from the Habitat Restoration Group report. Eventually
it was done, and probably more firmly by you.

Over the years since the report was completed, I have personally
fielded calls from real estate folks, prospective buyers, and
owners regarding the status of the area.  Clearly, during that
time, there was knowledge out in the community including owners
and real estate folks that a problem existed.  Often, Current
Planning staff would ask me on the spur of the moment because of
a question at the counter and because of some kind of "general"
knowledge amongst staff that a problem existed.  But that's not
fool-proof, as we know.

It's also possible that some misunderstanding might have come
from the positive point of view that somehow the problem could be
circumnavigated.  Originally, when Chris Gouig initially became
aware of the problem, and because it was within the urban-rural
boundary, that construction would be inevitable, even though it
might take time to get such a change in the LCP wording through
the Coastal Commission.  Chris was of the firm opinion that
because it was within the urban boundary that the consideration
of this riparian area should take a back seat to the urban infill
aspect and that housing interests should prevail.  In that way we
could simply kiss off any and all urban streams.

I decided to look up the LCP Sensitive Habitats Background Report
prepared by Long Range Planning staff (with plenty of my input).
In checking out the statement on the condition of the stream in
question (Stream No. 8), I see that it was reported to have
manmade damage, that the damage was "considerable", but that it
had "improved" (since aerial photos in 1941).

I have now (today) looked at 1928 aerial photography (available
in 1979 in DPW, but not known about by me, nor MOST of DPW staff,

either). What I see is kind of disturbing; it appears that the Montecito Road area has a vegetative cover much as it is today, but the area "downstream" is even more so showing some kind of woody vegetative cover, and it isn't eucalyptus! In another words, it would be relatively easy to enterpret the 1928 photography to show a swamp/riparian area to have covered a very much larger area than what is known today, especially downhill of the Montecito area itself. Of course, this area is now covered over with houses and seems to be pretty well drained, but next I will inquire about is in the geotechnical record within that area which might have been part of a much larger "swamp/wetland". And so it goes.

At any rate, you need to develop some kind of a statement that would provide Terry's information in the Staff Report, rather than make it anecdotal and appearing to try a cover-up. Thanks.

# Exhibit D

**Environmental Services Agency**
Planning and Building Division

**PROJECT FILE**

BOARD OF SUPERVISORS
MARY GRIFFIN
TOM HUENING
MICHAEL D. NEVIN
RUBEN BARRALES



☑ **Planning Division** · 415/363-4161 · FAX 363-4849

☐ **Building Inspection Section** · 415/363-4601 · FAX 363-4849

Director of
Environmental Services
Paul M. Koenig

Planning Administrator
Terry L. Burnes

# County of San Mateo

Mail Drop 55RC1-00 · 590 Hamilton Street, 2nd Floor · Redwood City · California 94063

April 27, 1993

To:        All Interested Parties

From:      Carolina Labat, Planning Commission Secretary

Subject:   *General Plan Amendment, File # GPA 93-0003*
           *LOCATION:  Montecito Avenue Riparian Corridor, El Granada*

On April 14, 1993, the San Mateo County Planning Commission considered a
request from the Planning Director for a recommendation to the Board of
Supervisors regarding how the County should proceed with property owners'
requests to develop lots located within a riparian corridor in urban El
Granada.

Based on the information provided by staff and evidence presented at this
hearing, the Planning Commission decided to recommend to the Board of
Supervisors for consideration that Planning staff develop a Local Coastal
Program amendment which would allow development within the previously
subdivided urban riparian corridor on a parcel by parcel basis.

If you have any questions, please contact Ted Herzog, Project Planner, at
(415) 363-1858.

# Exhibit E

# DRAFT

Attachment A

## County of San Mateo
## Planning and Building Division

### RECOMMENDED AMENDMENT TO THE LCP

Permit or Project
File Numbers:   ZTA 93-0003                          Hearing Date:

Prepared By:  Ted Herzog          For Adoption By:  Planning Commission

(To be inserted as Policy 1.34)

"Allow variances from the requirements of the Local Coastal Program when
granting Coastal Development Permits or other land use approvals when
necessary to avoid the taking or damaging of private property for public
use without the payment of just compensation therefor."

- 8 -

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 22 of 53

County of San Mateo
Planning and Building Division

ORDINANCE NO. _____

BOARD OF SUPERVISORS, COUNTY OF SAN MATEO, STATE OF CALIFORNIA

\* \* \* \* \* \* \* \* \* \*

AN ORDINANCE AMENDING SECTION 6328.32, 6530 AND 6531 OF CHAPTER 20B, DIVISION VI, PART ONE (ZONING REGULATIONS), SAN MATEO COUNTY ORDINANCE CODE

\* \* \* \* \* \* \* \* \* \*

The Board of Suprvisors of the County of San Mateo, State of California, DO ORDAIN as follows:

Section 1. Section 6328.32 of Chapter 20B of Part One of Division VI of the San Mateo County Ordinance Code is hereby amended as follows:

(a)    "Variances may be granted from the requirements of a policy, zoning ordinance, or standard of the Local Coastal Program when the approving authority finds that the strict application of the policy, zoning ordinance, or standard could result in a taking of private property for public use, without the payment of just compensation therefor."

(b)    "In addition to the requirements of this Chapter, variance applications shall be processed in accordance with the procedural requirements of Ordinance Section 6532."

(c)    "In order to establish entitlement to a variance under this section, the applicant for development must establish the following:

1.    A strict application of a policy, ordinance, or standard contained in the Local Coastal Program will result in a denial of all economically viable use of the property.

2.    The property is an existing legal parcel, or has been legalized under the policies of the Local Coastal Program.

3.    The property is not contiguous to other undeveloped property under the same ownership which could be developed in combination with the subject property.

- 11 -

4. Proposed development will comply, to the maximum extent feasible, with the policy, ordinance, or standard of the Local Coastal Program for which the variance is being sought.

5. Any adverse impacts to coastal resources will be mitigated to the fullest extent feasible."

(d) "The approving authority may approve a variance under this section upon making the following findings:

1. The strict application of the policy, zoning ordinance, or standard could result in a taking of private property for public use, without the payment of just compensation therefor.

2. The parcel's location, size, shape, topography, and/or other physical conditions vary substantially from those of other parcels in the same zoning district or vicinity.

3. Without the variance, the landowner would be denied the rights and privileges that are enjoyed by other landowners in the same zoning district or vicinity.

4. The variance does not grant the landowner a special privilege which is inconsistent with the restrictions placed on other parcels in the same zoning district.

5. The variance authorizes only uses or activities which are permitted by the zoning district.

6. The requirements of Section 6328.32.c above have been established.

7. The variance is otherwise consistent with the objectives of the General Plan, Local Coastal Program, and Zoning Regulations."

(e) "In approving a variance under this section, the approving authority shall impose such conditions as are necessary to ensure the public safety, health and welfare and to ensure that compliance with the policies, ordinances, and standards of the Local Coastal Program is met to the maximum extent feasible."

(f) The variance process set forth in this section does not preclude an application for a variance to the zoning regulations set forth in Section 6530 et. seq. in those instances where a taking of private property cannot be established.

Section 2. Section 6350 of Chapter 20B of Part One of Division VI of the San Mateo County Ordinance Code is hereby amended to include the following policy:

- 12 -

"A variance may also be granted to allow, within the Coastal Zone, development to vary from specific provisions of the Local Coastal Program when strict enforcement would take private property for public use, without the payment of just compensation therefor, pursuant to California Coastal Act Section 30010, in accordance with Section 6328.32 of the Coastal Development District Regulations."

Section 3. Section 6351 of Chapter 20B of Part One of Division VI of the San Mateo County Ordinance Code is hereby amended to include the following policy:

"Variances to the requirements of Local Coastal Program may be permitted pursuant to Zoning Regulations Section 6328.32."

Section 4. Pursuant to California Administrative Code, Section 13551.(b), this Ordinance will be in full force and effect in the Coastal Zone thirty (30) days after the Coastal Commission has certified it, without modification, as conforming with the California Coastal Act.

- 13 -

# Exhibit F

# MONTECITO AVENUE RIPARIAN CORRIDOR
## PARCEL LIST

This is a list of all the urban parcels which fall (at least partially) within the buffer zone of the Montecito Avenue riparian corridor in El Granada. Each of the parcels shown as buildable are either buildable according to current zoning and LCP allowances or else would require only a variance from the zoning ordinance for front and side yard setbacks. As indicated, these "buildable" parcels would allow for a residence to be built which complies with the LCP. However, there are some parcels on which something could be built on the parcel with a variance to the zoning ordinance and, perhaps in these cases, the LCP would not constitute a "taking" of development rights. These parcels are categorized to show that "maybe" they "require a LCP amendment" because the legal duty of County in these cases is not clear.

| NAME | APN | BUILDABLE | REQUIRES LCP AMEND |
|------|-----|-----------|--------------------|
| Kirby, Ken. & Melody | 047-073-19 | built | no |
| Rosinski, David | 047-073-20 | yes | no |
| | | | |
| Watson, Steve | 047-076-11 | no | yes |
| Watson, Steve | 047-076-13 | no | yes |
| Civjan, Neal | 047-076-15 | built | yes |
| Vista De La Playa | 047-076-17 | no | yes |
| Keeley, Mark & Marnie | 047-076-19 | no | yes |
| Dragun, Brian | 047-076-21 | yes | no |
| Stearns, Tyson | 047-076-22 | variance on 2464 sq.ft? | maybe |
| South, Leonard & Bette | 047-076-23 | no | yes |
| Marfal Inc. | 047-076-24 | no | yes |
| Sandoval, Joe & Dacia | 047-076-25 | no | yes |
| Larson, Ron. & Cheryl | 047-076-26 | no | yes |
| | | | |
| Shane, Lawrence | 047-077-13 | variance on 3203 sq.ft? | maybe |
| Wright, Ben. & Sandra | 047-077-14 | no | yes |
| | | | |
| Ray, Robert & Laura | 047-105-02 | built | no |
| McArthur, Gary & Linda | 047-105-03 | with variance | maybe |
| Deane, Will. & Laura | 047-105-15 | yes | no |
| Broughton, John | 047-105-17 | no | yes |
| Capune, Larry | 047-105-18 | variance on 3695 sq.ft? | maybe |
| Broughten, John | 047-105-21 | built | no |
| Callan, Will. & Martha | 047-105-22 | yes | no |
| Hibbs, Genev. Burnell | 047-105-23 | variance on ?? sq.ft? | maybe |
| Wong, Yuk & Yin | 047-105-24 | yes | no |
| Callan, Thom. & Gladys | 047-105-27 | no | yes |
| | | | |
| LePine, Louise | 047-111-03 | variance on 5791 sq.ft? | maybe |
| Jasperson, Daryl & Jan | 047-111-17 | yes | no |
| Broughton, John | 047-111-19 | no | yes |
| Goldburd, Ira & Efim | 047-111-21 | no | yes |
| Thompson, Mel & Marilyn | 047-111-28 | no | yes |
| HMB Properties Inc. | 047-111-29 | no | yes |
| Champion, Richard | 047-111-34 | yes | no |

| | | | |
|---|---|---|---|
| Goldburg, Ira & Efim | 047-111-35 | no | yes |
| AC Properties | 047-115-17 | no | yes |
| Carmichael, Peggy | 047-115-18 | yes | no |
| McAdoo, Barry | 047-115-19 | no | yes |

## QUESTIONS:

Would development of any of these parcels require a dedication to the road right-of-way?

# Exhibit G

1)    County purchases undevelopable parcels

2)    Land swap -- County parcels for undevelopable parcels
         not a viable option

3)    Transfer of Development Rights

      a)    Between parcels of like ownership in urban Mid-Coast

      b)    To any other parcel in the urban Mid-Coast which can utilize a
            second density credit.

4)    LCP amendment to allow development within the riparian buffer zone when
      there is no other alternative for development on the parcel.

5)    Third party purchase by a group such as:
            POST        -     not interested
            MPROSD      -
            State Parks -
            Coastal Conservancy -
            Nature Conservancy  -

6)    Planned Unit Development

7)    Have owner pursue a variance for 0 ft. front yard setback and 3' side
      yard setback when this will allow for development.

8)    Do nothing -- let the property owner prove "taking" in court.


**QUESTION:**

Which part of this riparian corridor constitutes "wetlands"?

# Exhibit H

SAN MATEO COUNTY
PLANNING DIVISION
R E C E I V E D

MAR 8 1989

Migrant Yellow Warblers would be adversely impacted by the loss of the riparian habitat, but because of the study area's small size, and this species' broad choice of habitats during migration, the impact would not be significant.

Yellow-breasted Chat. Removal or alteration of the existing habitat would reduce the study area's value for this species. However, because this species is expected to make very limited use of the study area, removal or alteration of the existing habitat would not be considered a significant impact to this species.

## POTENTIAL MITIGATION MEASURES FOR SIGNIFICANT IMPACTS

The development of homesites and roadways as shown on the project site would result in the removal of substantial amounts of riparian habitat and riparian buffer areas.

Three alternatives (1, 2, and 3) have been developed for the project site that would eliminate or reduce impacts to sensitive resources to a level of less than significant.

### Alternative 1

This scenario proposes to eliminate any impacts to the riparian corridor and buffer zone, through public purchase of property (Figure C). Seventeen parcels, which currently have all or the majority of their land within the riparian habitat and buffer zone would be affected. These parcels and other areas designated as County roadways would become public property as a County riparian preserve or park.

There would be no direct impacts to riparian habitat from this alternative and the 30' wide riparian buffer zone would be intact around the periphery of the corridor. This is the environmentally preferred alternative.

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 33 of 53

## Alternative 2

In this alternative, five parcels which contain both riparian habitat and riparian buffer areas would have exemptions granted to the riparian buffer zone (Figure D). Exemptions to the buffer would allow these lots to be developed with minimal impacts to the riparian corridor. In some lots the buffer could be reduced to a width of 15-20 feet, thus still providing some protection of the riparian habitat from the adjacent uses.

Twelve parcels would need to be acquired as public property, in order to result in no removal of riparian habitat.

## Alternative 3

This third alternative is a combination of methods: realignment of parcel lines, exemptions to the riparian buffer zone, removal of riparian habitat, and public purchase of property (Figure E). This alternative would also require mitigation for direct impacts to the riparian habitat through habitat replacement.

Along the southeast portion of the project site, a road would be constructed that would access four lots. Through lot realignment of parcel # 111-3, 19, 21, 28, and 29, and the removal of approximately 19,227 square feet of riparian habitat, these lots could be developed. Along the north and northwestern edge, through a take of approximately 18,734 square feet of riparian habitat, parcels #107-11, 23, 24 and parcel #077-14 could be developed. For the development of these lots, a removal of approximately 37,961 square feet (0.9 acre) would be necessary as would exemptions from the riparian buffer zone.

This alternative would also give riparian buffer zone exemptions to the 5 lots of Alternative 2.

Four lots (parcel #076-13, 19, 25, and 26), that are along the bottom of the channel would require public purchase.

Habitat Replacement. As mitigation to potential direct impacts to the riparian corridor (habitat removal), a habitat replacement

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 34 of 53

rate of 3:1 (3 square feet replaced for every one square foot removed) is currently being utilized by the California Department of Fish and Game through their 1601/1603 Streambed Alteration Agreement. The criteria for replacement is that the selected mitigation site be an area not currently supporting riparian habitat but which is suitable for such establishment. The site should have characteristics that will support riparian habitat for perpetuity. It is usually preferred that the mitigation area be located within or immediately adjacent to the project site.

This mitigation may be suitable for those parcels within the project site that are on the periphery of the riparian corridor, where some riparian corridor would be remaining. It would require, however, that some land within the project site or nearby be purchased and/or otherwise designated for this purpose. It may be possible for several parcel owners to pool their mitigation needs and select one area for revegetation. At a 3:1 mitigation rate, an area of approximately 113,883 square feet (2.6 acres) would be required. As this amount of suitable area does not exist on or immediately adjacent to the project site, an off-site location would be required. Depending upon availability of off-site planting areas, this alternative may be infeasible.

Because this alternative causes significant impacts to the riparian resources, which cannot be mitigated within the project site, it is not an environmentally preferred alternative.

43

APPENDIX A.  List of Vascular Plant Species Observed at the Study Area, El Granada, San Mateo County.


The following list, arranged by family according to <u>A California Flora</u> (Munz and Keck, 1968) and <u>A Flora of the Santa Cruz Mountains</u> (Thomas,1968), contains all plant species observed on the El Granada Riparian site during a survey conducted in September and December, 1988 and March 1989.  Most of the plants have been identified to species, but a few could only be identified to genus.


| SCIENTIFIC NAME | COMMON NAME |
|---|---|
| **APIACEAE** | |
| <u>Conium maculatum</u> | Poison Hemlock |
| <u>Eriophyllum confertiflorum</u> | Yellow Yarrow |
| <u>Oenanthe sarmentosa</u> | Pacific Oenanthe |
| | |
| **ASTERACEAE** | |
| <u>Artemisia californica</u> | California Sage |
| <u>Aster</u> sp. | Aster |
| <u>Baccharis pilularis</u> | |
| ssp. <u>consanguinea</u> | Coyote Brush |
| <u>Cirsium vulgare</u> | Bull Thistle |
| <u>Gnaphalium</u> sp. | Life-everlasting |
| <u>Helenium puberulum</u> | Sneezeweed |
| <u>Picris echioides</u> | Bristly Ox-tongue |
| <u>Senicio mikanioides</u> | German Ivy |
| | |
| **BRASSICACEAE** | |
| <u>Brassica campestris</u> | Field Mustard |
| <u>Nasturtium officiale</u> | Watercress |
| <u>Raphanus sativa</u> | Wild Radish |
| | |
| **CAPRIFOLIACEAE** | |
| <u>Sambucus callicarpa</u> | Red Elderberry |
| | |
| **CORNACEAE** | |
| <u>Cornus californica</u> | Creek Dogwood |
| | |
| **CYPERACEAE** | |
| <u>Cyprus esculentus</u> | Umbrella Sedge |
| <u>Scirpus</u> sp. | Sedge |
| <u>Scirpus fluviatilis</u> | River Bulrush |
| | |
| **EQUISETACEAE** | |
| <u>Equisetum arvense</u> | Common Horsetail |
| <u>Equisetum</u> sp. | Horsetail |
| | |
| **EUPHORBIACEAE** | |
| <u>Euphorbia lathyris</u> | Golpher Spurge |

1

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 36 of 53

**FABACEAE**
Cytisus sp.                                    Broom
Lupinus aboreus                                Yellow Beach Lupine
Melilotus indicus                              Yellow Sweet Clover

**GRAMINEAE**
Avena barbarat                                 Wild Oat
Bromus diandrus                                Ripgut Brome
Cortaderia selloana                            Pampas Grass
Polypogon monspeliensis                        Rabbit's Foot GRass

**GROSSULARIACEAE**
Ribes sanguineum var. glutinosum               Current

**JUNCACEAE**
Juncus xiphioides                              Iris-Leaved Rush
Juncus sp.                                     Rush

**LAMINACEAE**
Stachys rigida                                 Hedge Nettle

**LYTHRACEAE**
Lythrum sp.                                    Loosestrife

**ONOGRACEAE**
Epilobium sp.                                  Willow Herb

**OXALIDACEAE**
Oxalis pes-caprae                              Sour Grass

**MYRTACEAE**
Eucalyptus globulus                            Blue Gum Eucalyptus

**PINACEAE**
Pinus radiata                                  Monterey Pine

**PLANTAGINACEAE**
Plantago lanceolata                            English Plantain
Plantago major                                 Broad Leaf Plantain

**POLYGONACEAE**
Polygonum sp.                                  Smartweed
Rumex crispus                                  Curly Dock

**POLYPODIACEAE**
Dryopteris arguta                              Coastal Wood Fern
Polystichum munitum                            Western Sword Fern
Woodwardia fimbriata                           Western Chain Fern

**PRIMULACEAE**
Anagallis arvensis                             Scarlet Pimpernel

The Habitat Restoration Group

APPENDIX A (continued)


**ROSACEAE**
Rubus parviflorus var. _velutinus_          Thimblebery
Rubus ursinus                                Blackberry
Rubus spectabilis                            Salmonberry

**SALICACEAE**
Salix coulteri                               Coulter's Willow
Salix lasiandra                              Yellow Willow
Salix lasiolepsis                            Arroyo Willow

**SCROPHULARIACEAE**
Mimulus guttatus                             Monkey Flower
Verbascum thapsus                            Mullein

**SOLANACEAE**
Solanum.sp.                                  Nightshade

The Habitat Restoration Group

APPENDIX B. Wildlife Species Observed or Predicted to Occur On or Immediately Adjacent to the Study Area, El Granada, San Mateo County

Key:

* = Species known or expected to use the study area's riparian habitat.

O = Species observed on or immediately adjacent to the study area during the field surveys.

S = Sign of species observed (e.g. tracks or droppings) on the study area during the field surveys.

P = Species predicted to occur on or immediately adjacent to the project area.

P?= Species could potentially occur on the study area.

N = Bird species predicted to nest in the riparian habitat on the study area.

n = Bird species predicted to nest in only in non-riparian habitats on or immediately adjacent to the study area.

a = Species expected to be primarily or entirely aerial at the study area, having little or no interaction with the terrestrial habitats.


CLASS: AMPHIBIA

ORDER: CAUDATA (Salamanders)
  FAMILY: SALAMANDRIDAE (Newts)
* Rough-skinned Newt, (*Taricha granulosa*)         P?
* California Newt, (*Taricha torosa*)         P
  FAMILY: PLETHODONITDAE (Lungless Salamanders)
* Ensatina, (*Ensatina eschscholtzi*)         P
* California Slender Salamander, (*Batrachoseps attenuatus*)   O
* Arboreal Salamander, (*Aneides lugubris*)         P

ORDER: SALIENTIA (Frogs and Toads)

  FAMILY: BUFONIDAE (True Toads)
* Western Toad, (*Bufo boreas*)         O
  FAMILY: HYLIDAE (Treefrogs and Relatives)
* Pacific Treefrog, (*Hyla regilla*)         O

The Habitat Restoration Group

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 39 of 53

CLASS: REPTILIA

ORDER: SQUAMATA (Lizards and Snakes)

SUBORDER: SAURIA (Lizards)

  FAMILY: IGUANIDAE (Iguanids)
*  Western Fence Lizard, (*Sceloporus occidentalis*)    O
  FAMILY: SCINCIDAE (Skinks)
*  Western Skink, (*Eumeces skiltonianus*)    P
  FAMILY: ANGUIDAE (Alligator Lizards and Relatives)
*  Southern Alligator Lizard, (*Gerrhonotus multicarinatus*)  P
*  Northern Alligator Lizard, (*Gerrhonotus coeruleus*)  P

SUBORDER: SERPENTES (Snakes)

  FAMILY: COLUBRIDAE (Colubrids)
*  Racer, (*Coluber constrictor*)    P
*  Gopher Snake, (*Pituophis melanoleucus*)    O
  Common Kingsnake, (*Lampropeltis getulus*)    P?
*? San Francisco Garter Snake (*Thamnophis sirtalis tetrataenia*) P?
*  Western Terrestrial Garter Snake, (*Thamnophis elegans*) P?
  FAMILY: VIPERIDAE (Vipers)
  Western Rattlesnake, (*Crotalus viridis*)    P

CLASS: AVES

ORDER: FALCONIFORMES (Vultures, Hawks, and Falcons)

  FAMILY: CATHARTIDAE (American Vultures)
  Turkey Vulture, (*Cathartes aura*)    O,a
  FAMILY: ACCIPITRIDAE (Hawks, Old World Vultures,
    and Harriers)
  Osprey, (*Pandion haliaetus*)    P,a
*  Black-shouldered Kite, (*Elanus caeruleus*)    O
*  Northern Harrier, (*Circus cyaneus*)    O
*  Sharp-shinned Hawk, (*Accipiter striatus*)    O
*  Cooper's Hawk, (*Accipiter cooperii*)    O
*  Red-shouldered Hawk, (*Buteo lineatus*)    O,n
*  Red-tailed Hawk, (*Buteo jamaicensis*)    O,n
  Rough-legged Hawk, (*Buteo lagopus*)    P,a
  FAMILY: FALCONIDAE (Caracaras and Falcons)
  American Kestrel, (*Falco sparverius*)    O,n
*  Merlin, (*Falco columbarius*)    P,a

ORDER: GALLIFORMES (Megapodes, Currassows, Pheasants, and
  Relatives)

  FAMILY: PHASIANIDAE (Quails, Pheasants, and Relatives)
*  California Quail, (*Callipepla californica*)    O,N

The Habitat Restoration Group

APPENDIX B, continued.


ORDER: CHARADRIIFORMES (Shorebirds, Gulls, and Relatives)

    FAMILY: CHARADRIIDAE (Plovers and Relatives)
     Killdeer, (*Charadrius vociferus*)                  O
    FAMILY: LARIDAE (Gulls and Terns)
     Mew Gull, (*Larus canus*)                     P,a
     Ring-billed Gull, (*Larus delawarensis*)      P,a
     California Gull, (*Larus californicus*)     O,a
     Herring Gull, (*Larus argentatus*)        P,a
     Western Gull, (*Larus occidentalis*)      O,a
     Glaucous-winged Gull, (*Larus glaucescens*)   O,a

ORDER: COLUMBIFORMES (Pigeons and Doves)

    FAMILY: COLUMBIDAE (Pigeons and Doves)
     Rock Dove, (*Columba livia*)               O,a
*  Band-tailed Pigeon, (*Columba fasciata*)    O,n?
*  Mourning Dove, (*Zenaida macroura*)       O,N

ORDER: STRIGIFORMES (Owls)

    FAMILY: TYTONIDAE (Barn Owls)
     Barn Owl, (*Tyto alba*)                  P,n?
    FAMILY: STRIGIDAE (Typical Owls)
*  Great Horned Owl, (*Bubo virginianus*)    P,n
*  Long-eared Owl, (*Asio otus*)           P?

ORDER: APODIFORMES (Swifts and Hummingbirds)

    FAMILY: APODIDAE (Swifts)
     Black Swift, (*Cypseloides niger*)        P,a
     Vaux's Swift, (*Chaetura vauxi*)         P,a
     White-throated Swift, (*Aeronautes saxatalis*)  P,a
    FAMILY: TROCHILIDAE (Hummingbirds)
*  Anna's Hummingbird, (*Calypte anna*)     O,N
*  Rufous Hummingbird, (*Selasphorus rufus*)   P
*  Allen's Hummingbird, (*Selasphorus sasin*)   O,N

ORDER: CORACIIFORMES (Kingfishers and Relatives)

    FAMILY: ALCEDINIDAE (Kingfishers)
     Belted Kingfisher, (*Ceryle alcyon*)       P,a

ORDER: PICIFORMES (Woodpeckers and Relatives)

    FAMILY: PICIDAE (Woodpeckers and Wrynecks)
*  Red-breasted Sapsucker, (*Sphyrapicus ruber*)  S
*  Downy Woodpecker, (*Picoides pubescens*)    O,N
*  Hairy Woodpecker, (*Picoides villosus*)     P
*  Northern Flicker, (*Colaptes auratus*)     O,N

The Habitat Restoration Group

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 41 of 53

APPENDIX B, continued.


ORDER: PASSERIFORMES (Perching Birds)

FAMILY: TYRANNIDAE (Tyrant Flycatchers)
* Olive-sided Flycatcher, (*Contopus borealis*)                    O,n
* Western Wood-Pewee, (*Contopus sordidulus*)                      O
* Willow Flycatcher, (*Empidonax traillii*)                        P
* Pacific-slope Flycatcher, (*Empidonax difficilis*)               O,N
* Black Phoebe, (*Sayornis nigricans*)                             O,N
  Say's Phoebe, (*Sayornis saya*)                                  P
* Ash-throated Flycatcher, (*Myiarchus cinerascens*)               P?
  Western Kingbird, (*Tyrannus verticalis*)                        P
  FAMILY: HIRUNDINIDAE (Swallows)
  Tree Swallow, (*Tachycineta bicolor*)                            P,a
* Violet-green Swallow, (*Tachycineta thalassina*)                 O,N
  Northern Rough-winged Swallow, (*Stelgidopteryx
           serripennis*)                                           P,a
  Cliff Swallow, (*Hirundo pyrrhonota*)                            O,n
  Barn Swallow, (*Hirundo rustica*)                                O,n
  FAMILY: CORVIDAE (Jays, Magpies, and Crows)
* Steller's Jay, (*Cyanocitta stelleri*)                           O,N
* Scrub Jay, (*Aphelocoma coerulescens*)                           O,N
  Common Raven, (*Corvus corax*)                                   O,n?
  FAMILY: PARIDAE (Titmice)
* Chestnut-backed Chickadee, (*Parus rufescens*)                   O,N
  FAMILY: AEGITHALIDAE (Bushtit)
* Bushtit, (*Psaltriparus minimus*)                                O,N
  FAMILY: SITTIDAE (Nuthatches)
  Red-breasted Nuthatch, (*Sitta canadensis*)                      P?
  Pygmy Nuthatch, (*Sitta pygmaea*)                                O,n
  FAMILY: CERTHIIDAE (Creepers)
* Brown Creeper, (*Certhia americana*)                             P
  FAMILY: TROGLODYTIDAE (Wrens)
* Bewick's Wren, (*Thryomanes bewickii*)                           O,N
* House Wren, (*Troglodytes aedon*)                                P
* Winter Wren, (*Troglodytes troglodytes*)                         O
  FAMILY: MUSCICAPIDAE (Old World Warblers, Gnatcatchers,
      Kinglets, Thrushes, Bluebirds, and Wrentit)
  Golden-crowned Kinglet, (*Regulus satrapa*)                      P
* Ruby-crowned Kinglet, (*Regulus calendula*)                      O
* Blue-gray Gnatcatcher, (*Polioptila caerulea*)                   P
  Western Bluebird, (*Sialia mexicana*)                            P?
* Swainson's Thrush, (*Catharus ustulatus*)                        O,N
* Hermit Thrush, (*Catharus guttatus*)                             O
* American Robin, (*Turdus migratorius*)                           O,N
* Varied Thrush, (*Ixoreus naevius*)                               O
* Wrentit, (*Chamaea fasciata*)                                    O,N
  FAMILY: MIMIDAE (Mockingbirds and Thrashers)
  Northern Mockingbird, (*Mimus polyglottos*)                      P?,n?
  California Thrasher, (*Toxostoma redivivum*)                      P,n
  FAMILY: MOTACILLIDAE (Wagtails and Pipits)
  American Pipit, (*Anthus rubescens*)                             O

4

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 42 of 53

APPENDIX B, continued.

    FAMILY: BOMBYCILLIDAE (Waxwings)
\*  Cedar Waxwing, (*Bombycilla cedrorum*)              O
    FAMILY: LANIIDAE (Shrikes)
   Loggerhead Shrike, (*Lanius ludovicianus*)         P
    FAMILY: STURNIDAE (Starlings)
\*  European Starling, (*Sturnus vulgaris*)          O,N
    FAMILY: VIREONIDAE (Typical Vireos)
\*  Solitary Vireo, (*Vireo solitarius*)            P
\*  Hutton's Vireo, (*Vireo huttoni*)             O,N
\*  Warbling Vireo, (*Vireo gilvus*)              O,N
    FAMILY: EMBERIZIDAE (Wood Warblers, Sparrows, Blackbirds,
      and Relatives)
\*  Orange-crowned Warbler, (*Vermivora celata*)     O,N
\*  Nashville Warbler, (*Vermivora ruficapilla*)     P
\*  Yellow Warbler, (*Dendroica petechia*)         O
\*  Yellow-rumped Warbler, (*Dendroica coronata*)    O
\*  Black-throated Gray Warbler, (*Dendroica nigrescens*)   P
\*  Townsend's Warbler, (*Dendroica townsendi*)      O
\*  Hermit Warbler, (*Dendroica occidentalis*)       P
\*  Palm Warbler, (*Dendroica palmarum*)          P
\*  Blackpoll Warbler, (*Dendroica striata*)       P?
\*  Black-and-white Warbler, (*Mniotilta varia*)     P?
\*  American Redstart, (*Setophaga ruticilla*)      P?
\*  Northern Waterthrush, (*Seiurus noveboracensis*)   P?
\*  MacGillivray's Warbler, (*Oporornis tolmiei*)    P
\*  Common Yellowthroat, (*Geothlypis trichas*)     P
\*  Wilson's Warbler, (*Wilsonia pusilla*)        O,N
\*  Yellow-breasted Chat, (*Icteria virens*)       P?
\*  Western Tanager, (*Piranga ludoviciana*)      P
\*  Black-headed Grosbeak, (*Pheucticus melanocephalus*)  O,N
\*  Lazuli Bunting, (*Passerina amoena*)         P?
\*  Rufous-sided Towhee, (*Pipilo erythropthalmus*)  O,N
\*  California Towhee, (*Pipilo crissalis*)        O,N
   Chipping Sparrow, (*Spizella passerina*)       P
   Savannah Sparrow, (*Passerculus sandwichensis*)  P
\*  Fox Sparrow, (*Passerella iliaca*)            O
\*  Song Sparrow, (*Melospiza melodia*)         O,N
\*  Lincoln's Sparrow (*Melospiza lincolnii*)      O
\*  Swamp Sparrow, (*Melospiza georgiana*)       P?
\*  White-throated Sparrow, (*Zonotrichia albicollis*)  P
\*  Golden-crowned Sparrow, (*Zonotrichia atricapilla*)  O
\*  White-crowned Sparrow, (*Zonotrichia leucophrys*)  O,n
\*  Dark-eyed Junco, (*Junco hyemalis*)         O,N
\*  Red-winged Blackbird, (*Agelaius phoeniceus*)   O
   Western Meadowlark, (*Sturnella neglecta*)     P
\*  Brewer's Blackbird, (*Euphagus cyanocephalus*)  O,N
\*  Brown-headed Cowbird, (*Molothrus ater*)     O,N
\*  Northern Oriole, (*Icterus galbula*)          P
    FAMILY: FRINGILLIDAE (Finches)
\*  Purple Finch, (*Carpodacus purpureus*)       O,N
\*  House Finch, (*Carpodacus mexicanus*)       O,N
   Red Crossbill, (*Loxia curvirostra*)         P

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 43 of 53

APPENDIX B, continued.

* Pine Siskin, (*Carduelis pinus*)                                    O,n
* Lesser Goldfinch, (*Carduelis psaltria*)                            O,N
* American Goldfinch, (*Carduelis tristis*)                           O,N
  FAMILY: PASSERIDAE (Weaver Finches)
  House Sparrow, (*Passer domesticus*)                                O,n


CLASS:  MAMMALIA

ORDER: MARSUPIALIA (Opossums, Kangaroos, and Relatives)

  FAMILY: DIDELPHIDAE (Opossums)
* Virginia Opossum, (*Didelphis virginiana*)                          S

ORDER: INSECTIVORA (Shrews and Moles)

  FAMILY: SORICIDAE (Shrews)
* Ornate Shrew, (*Sorex ornatus*)                                     P
* Trowbridge's Shrew, (*Sorex trowbridgii*)                           P?
  FAMILY: TALPIDAE (Moles)
* Broad-footed Mole, (*Scapanus latimanus*)                           P

ORDER: CHIROPTERA (Bats)

  FAMILY: VESPERTILIONIDAE (Vespertilionid Bats)
  Long-eared Myotis (*Myotis evotis*)                                 P,a
  Yuma Myotis, (*Myotis yumanensis*)                                  P,a
  Long-legged Myotis (*Myotis volans*)                                P,a
  Fringed Myotis, (*Myotis thysanodes*)                               P,a
  California Myotis, (*Myotis californicus*)                          P,a
  Small-footed Myotis, (*Myotis leibii*)                              P,a
  Western Pipistrelle, (*Pipistrellus hesperus*)                      P,a
  Big Brown Bat (*Eptesicus fuscus*)                                  P,a
  Red Bat, (*Lasiurus borealis*)                                      P,a
  Pallid Bat, (*Antrozous pallidus*)                                  P,a
  FAMILY: MOLOSSIDAE (Free-tailed Bat)
  Brazilian Free-tailed Bat, (*Tadarida brasiliensis*)               P,a

ORDER: LAGOMORPHA (Rabbits, Hares, and Pikas)

  FAMILY: LEPORTIDAE (Rabbits and Hares)
* Brush Rabbit, (*Sylvilagus bachmani*)                               O
* Audubon's Cottontail, (*Sylvilagus audubonii*)                      O

ORDER: RODENTIA (Squirrels, Rats, Mice, and Relatives)

  FAMILY: GEOMYIDAE (Pocket Gophers)
* Botta's Pocket Gopher, (*Thomomys bottae*)                          O
  FAMILY: CRICETIDAE (Deer Mice, Voles, and Relatives)
* Western Harvest Mouse, (*Reithrodontomys megalotis*)                P
  California Mouse, (*Peromyscus californicus*)                       P

6

The Habitat Restoration Group

APPENDIX B, continued.


| | | |
|---|---|---|
| * | Deer Mouse, (*Peromyscus maniculatus*) | P |
| | Brush Mouse, (*Peromyscus boylii*) | P? |
| | Pinyon Mouse, (*Peromyscus truei*) | P? |
| * | Dusky-footed Woodrat, (*Neotoma fuscipes*) | S |
| | California Vole, (*Microtus californicus*) | O |
| | FAMILY: MURIDAE (Old World Rats and Mice) | |
| | Black Rat, (*Rattus rattus*) | P? |
| * | Norway Rat, (*Rattus norvegicus*) | P |
| * | House Mouse, (*Mus musculus*) | P |

ORDER: CARNIVORA (Carnivores)

| | | |
|---|---|---|
| | FAMILY: CANIDAE (Foxes, Wolves, and Relatives) | |
| * | Coyote, (*Canis latrans*) | S |
| | Gray Fox, (*Urocyon cinereoargenteus*) | P |
| | FAMILY: PROCYONIDAE (Raccoons and Relatives) | |
| * | Raccoon, (*Procyon lotor*) | S |
| | FAMILY: MUSTELIDAE (Weasels, Badgers, and Relatives) | |
| * | Long-tailed Weasel, (*Mustela frenata*) | P |
| * | Striped Skunk, (*Mephitis mephitis*) | P |
| | FAMILY: FELIDAE (Cats) | |
| * | Bobcat, (*Lynx rufus*) | P |

ORDER: ARTIODACTYLA

| | | |
|---|---|---|
| | FAMILY: CERVIDAE (Deer, Elk, and Relatives) | |
| * | Black-tailed Deer, (*Odocoileus hemionus*) | O |

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 45 of 53

APPENDIX C. Status and Predicted Pattern of Occurrence of Threatened and Endangered Species and Other Species of Concern Observed or Predicted to Occur in the Study Area, El Granada, San Mateo County.

| Species | Status | Predicted Occurrence at the Project Site |
|---|---|---|
| San Francisco Garter Snake | FE,CE | Possible overwintering visitor to the undeveloped portion of the study area. |
| Osprey | SSC | Rare transient over the study area during spring and fall migration. |
| Black-shouldered Kite | CFP | Rare year-round visitor; may occurs primarily in the fall and winter. |
| Northern Harrier | SSC | Rare fall and winter visitor. |
| Sharp-shinned Hawk | SSC,FSS | Uncommon spring and fall migrant and winter visitor. |
| Cooper's Hawk | SSC | Uncommon spring and fall migrant and winter visitor. |
| Merlin | SSC | Occasional winter visitor. |
| California Gull | SSC | Common transient over the study area. |
| Black Swift | SSC | Rare transient over the study area during spring and fall migration. |
| Willow Flycatcher | CT,FSS | Predicted to occur as a rare visitor during spring and fall migration. |
| Yellow Warbler | SSC | Uncommon or fairly common spring and fall migrant. |
| Yellow-breasted Chat | SSC | Predicted to be a very rare or occasional spring and fall migrant. |

## Wildlife Status Definitions

**U.S. Fish and Wildlife Service**

FE  Listed as Endangered by the Federal Government. Endangered species means any species which is in danger of extinction throughout all or a significant portion of it's range.

FSS  Federal Sensitive Species (BLM and USFS).

---

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 46 of 53

## Wildlife Status Definitions
### (Continued)

**California Fish and Game Commission**

CE    Listed as Endangered in the State of California. Endangered means a native species or subspecies of animal which is in serious danger of becoming extinct throughout all or a significant portion of its range.

CT    Listed as Threatened in the State of California. Threatened species means a native species or subspecies that, although not presently threatened with extinction, is likely to become an endangered species in the foreseeable future in the absence of special protection and management efforts.

CFP   A California Dept. of Fish and Game "fully protected" species. These species cannot be taken in any manner at any time of the year except for scientific purposes under special permit.

SSC   A California Dept. of Fish and Game Species of Special Concern. Species of special concern are those whose breeding populations in the State have declined severely or are otherwise so low that extirpation is a real possiblity (Remsen 1978).

2

The Habitat Restoration Group

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 48 of 53



LEGEND

Central Coast Arroyo Willow Riparian Forest

Northern Coastal Scrub

Non-native Grassland

*Eucalyptus* Forest

San Mateo County Assessor Parcel No.

Plant Communities

SCALE
0 100 200 300 FT

N

THE HABITAT RESTORATION GROUP

JOHN STANLEY & ASSOCIATES, INC.

EL GRANADA RIPARIAN STUDY

DATE
Aug. 1989

PROJECT NO.
444-01

FIGURE
A



**LEGEND**

Encroach Into Riparian and
Buffer Zone for Development

Purchase of Lots

[ 12 ]  San Mateo County Assessor
Parcel No.

SCALE
0   100   200   300 FT.

Limited Acquisition
Redesign of Parcels With Some Encroachment
Into Buffer Zone and Riparian Corridor

| | DATE<br>Aug. 1989 | FIGURE<br>E |
|---|---|---|
| EL GRANADA RIPARIAN STUDY<br>ALTERNATIVE 3 | PROJECT NO.<br>444-01 | |
| THE HABITAT RESTORATION GROUP<br>JOHN STANLEY & ASSOCIATES, INC. | | |

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 50 of 53



THE HABITAT RESTORATION GROUP

JOHN STANLEY & ASSOCIATES, INC.

EL GRANADA RIPARIAN STUDY

ALTERNATIVE 2

LEGEND

Encroach Into Buffer Zone for Development

Purchase of Lots

San Mateo County Assessor Parcel No.

Acquisition of Riparian Corridor With Encroachment Into Buffer Zone

DATE Aug. 1989

PROJECT NO. 444-01

FIGURE D

SCALE

Case: 20-17389, 03/29/2021, ID: 12057454, DktEntry: 23, Page 51 of 53



LEGEND

Purchase of Lots and
Establish County Reserve of Riparian

San Mateo County Assessor
Parcel No.

SCALE

Acquisition of Riparian Corridor
and Creation of 30' Buffer Zone

EL GRANADA RIPARIAN STUDY
ALTERNATIVE 1

| DATE | FIGURE |
|---|---|
| Aug. 1989 | C |
| PROJECT NO. | |
| 444-01 | |

THE HABITAT RESTORATION GROUP

JOHN STANLEY & ASSOCIATES, INC.
6001 BUTLER LAKE SUITE #1 • SCOTTS VALLEY, CA 95066 • (408) 438-4682

# Exhibit I

RECEIVED
IN THE OFFICE OF

JAN 8 2019

CLERK OF THE
BOARD OF SUPERVISORS

**COUNTY OF SAN MATEO**
BOARD OF SUPERVISORS

**Board of Supervisors**
Dave Pine, 1st District
Carole Groom, 2nd District
Don Horsley, 3rd District
Warren Slocum, 4th District
David J. Canepa, 5th District

**County Goverment Center**
400 County Center, 1st Floor
Redwood City, CA 94063
650-363-4653 T

www.smcgov.org

NAME: FELIX MENDELSON DATE:* 8 JAN 2019

CONTACT PHONE NUMBER: (415) 595-8331

IS THIS REQUEST URGENT? ☐ YES ☑ NO DATE NEEDED: ____________

PLEASE CHECK ONE BOX BELOW:

☑ I WOULD LIKE THE PUBLIC RECORDS SENT TO ME AT THE FOLLOWING ADDRESS:

222 JO DRIVE
LOS GATOS CA
95032

EMAIL ADDRESS: FELIXM911@AOL.COM

☐ I WILL PICK-UP THE PUBLIC RECORDS WHEN IT IS READY.

PUBLIC RECORDS NEEDED: *(PLEASE INCLUDE AS MUCH DETAIL AS POSSIBLE ABOUT THE PUBLIC RECORDS YOU ARE REQUESTING – IE DATES, SUBJECT MATTER, RESOLUTION AND/OR ORDINANCE NUMBER, ETC...)*

ALL REPORTS FOR [illegible] MONTECITO RIPARIAN CORRIDOR USED IN [illegible] DESIGNATION OF THE RIPARIAN CORIDOR, INCLUDING [illegible] BIOLOGIC, GEOLOGIC, GEOTECHNICAL, SOILS, SURVEYS AND ETC.; THE DOCUMENTS ACCOMPANYING THE FINDING OF A RIPARIAN CORRIDOR AND THE MINUTES OF THE SAN MATEO COUNTY AGENCY / BODY TASKED WITH MAKING SUCH FINDING.

DATE DELIVERED: ____________ CLERK'S SIGNATURE: ____________

**PLEASE NOTE: We will need at least 10 days to fulfill your request as some public records may have to be researched and obtained from archives. Thank you.*